## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 3:20-cv-30130-KAR**

**BRANDON NAVOM**
        **Plaintiff,**
**v.**
**CITY OF BOSTON and MARTY WALSH, in**
**his official and individual capacities,**
        **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER CASE PURSUANT TO FED. R. CIV. P. 12(B)(3) AND FED. R. CIV. P. 12(B)(6) AND REQUEST FOR MONETARY SANCTIONS PURSUANT TO FED. R. CIV. P. 11

### I.      INTRODUCTION

Now comes the Defendants, City of Boston (the "City") and Martin J. Walsh ("Mayor Walsh"), and hereby respectfully move this Honorable Court pursuant to Fed. R. Civ. P. 12(b)(3) to dismiss Plaintiff's Complaint, or in the alternative, transfer the case, on the grounds that: (i) Plaintiff filed the action in the wrong courthouse; or (ii) in the interest of justice.  The City and Mayor Walsh also move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).  As grounds, they state that: (1) the Complaint is barred by the doctrine of *res judicata*; and (2) Plaintiff failed to adequately plead the individual claims.  Because of the frivolous nature of Plaintiff's Complaint, the City and Mayor Walsh seek attorneys' fees and costs  in accordance with Fed. R. Civ. P. 11.

### II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a resident of Lowell Massachusetts.  (Attached hereto as Exhibit A is a copy Plaintiff's deed; attached as Exhibit B is a partial copy of Plaintiff's Registry of Motor Vehicles

---

[1] For the limited purposes of the instant motion, the City accepts the facts cited to the plaintiff's motion as true.

1

record which lists Plaintiff's address as Lowell; attached as Exhibit C is a screen capture of Plaintiff's Facebook page listing his residence as Lowell.)  Above the caption of his Complaint, Plaintiff lists his address as 680 State Rd, North Adams, Massachusetts.  The deeded owners of 680 State Rd are Bruce and Sandra Navom, who, upon information and belief, are Plaintiff's parents.  (See Ex. D.)

On August 11, 2020, Plaintiff filed a two count Complaint in the Western Division of the United States District Court for the District of Massachusetts.  As alleged in the Complaint: On August 12, 2017, the "Unite the Right Rally" took place in Charlottesville, Virginia (Complaint, ¶ 2.)  On August 19, 2017, there was a "Boston Free Speech Rally" (the "Rally") taking place at Boston Common.  (Id. at ¶ 3.)  The Rally had no affiliation with the Unite the Right Rally.  (Id. at ¶ 4.)   Mayor Walsh, the Mayor for the City of Boston, made a variety of statements concerning the Rally (id. at ¶ 11), including:

> 1.      On August 12, 2017, Mayor Walsh said: "The whole premise behind what they're doing there -- the white supremacist group and the neo-Nazis, I don't quite understand what their message is. From my understanding they want to come to Boston next week. There's no place for that type of hate." (Id. at ¶ 11.a.)

> 2.      On August 12, 2017, Mayor Walsh said: "There's no place for the hate that they're spewing." "It's my understanding that they're scheduled to come to Boston. I know we probably can't stop it because of free speech, but they're spewing hate. We don't need that right now in our country." (Id. at ¶ 11.b.)

> 3.      On August 12, 2017, Mayor Walsh tweeted: "Boston is an inclusive place for all. Hate will not be tolerated in our City." The tweet contained a link to a CBS Boston article with the title "'We Don't Want You,' Walsh Warns Ahead Of Planned Boston Free Speech Rally." (Id. at ¶ 11.c.)

> 4.      On August 13, 2017, Mayor Walsh tweeted: "Boston is an inclusive place for all. Hate will not be tolerated in our City." The tweet contained a link to an article titled, "We don't want you: Walsh warns of planned Boston Free Speech Rally." (Id. at ¶ 11.d.)

5.      On August 13, 2017, Mayor Walsh said: "We don't need this type of hate," "So my message is clear to this group. We don't want you in Boston. We don't want you on Boston Common. We don't want you spewing the hate that we saw yesterday, and the loss of life." (Id. at ¶ 11.e.)

6.      On August 14, 2017, the AP reported: "Boston Mayor Martin Walsh said Monday that the city stands with Virginia and will not welcome what he described as 'hate groups' who might be thinking of holding a rally in Boston." (Id. at ¶ 11.f.)

7.      On Monday, August 14, 2017, Mayor Walsh said: ''We also have a message for the hate groups, especially any who are planning to come to our city this weekend: Boston does not welcome you here. Boston does not want you here. Boston rejects your message.'' (Id. at ¶ 11.g.)

8.      On August 14, 2017 Mayor  Walsh "Don't hand hatred a megaphone and pretend you can't hear it" and "Leaders call out hate and reject it before it becomes violence. That's why we're here today. That's why this weekend myself and the governor spent nearly about 10 or 15 different phone calls talking about how do we reject hate in the commonwealth and the city of Boston.'" (Id. at ¶ 11.h.)

9.      On August 14, 2017 Mayor Walsh tweeted: "Today & every day Boston stands up against hate. I'm saddened to see such a despicable action in this great city. (1/2)"  (Id. at ¶ 11.i.)

10.     On August 14, 2017, at 5:00 PM, Mayor Walsh tweeted  a photo of himself at a microphone captioned with his statement: "Don't hand hatred a microphone and pretend you don't here (sic) it."

11.     On August 14, 2017, Mayor Walsh said, "Don't hand hatred a megaphone and pretend you can't hear it." (Id. at ¶ 11.j.)

12.     On August 14, 2017, Mayor Walsh stated: "Leaders call out hate and reject it before it becomes violence. That's why we're here today. That's why this weekend myself and the governor spent nearly about 10 or 15 different phone calls talking about how do we reject hate in the commonwealth (sic) and the city of Boston." (Id. at ¶ 11.k.)

13.     On August 17, 2017, Mayor Walsh tweeted: "Hatred and intimidation are not welcome in Boston or the Commonwealth." (Id. at ¶ 11.l.)

14.     On August 18, 2017 WBZ news reported "The mayor said he has spoken with the Southern Poverty Law Center for guidance on how to handle events involving white supremacists." (Id. at ¶ 11.m.)

15.     On August 18, 2017, Mayor stated:  "They [the Southern Poverty Law Center] say that interacting with these groups just gives them a platform to spread their message of hate." (Id. at ¶ 11.n.)

16.     On August 18, 2017, Mayor Walsh tweeted: "We'll return hate with love. And we will stand together for peace and unity -- always. #OutOfMany1." (Id. at ¶ 11.o.)

17.     On August 18, 2017, Mayor Walsh tweeted: "We have to support those that are targeted, and stand together in unity." (Id. at ¶ 11.p.)

18.     On August 18, 2017, Mayor Walsh tweeted: "Hatred and intimidation are not welcome in Boston or the Commonwealth." (Id. at ¶ 11.q.)

19.     On August 19, 2017, Mayor Walsh said "This is a potentially very important moment in time for our country here in Boston, Massachusetts to push back on some of the rhetoric and the hate, the anti-Semitism and the racism that's being talked about and going on in our country. I think Boston can start to turn that tidem" (sic). (Id. at ¶ 11.r.)

20.     On August 19, 2018, Mayor Walsh tweeted: "I ask everyone to be peaceful today and respect our City. Love, not hate. We stand together against intolerance." (Id. at ¶ 11.s.)

21.     On August 19, 2017, Mayor Walsh tweeted: "Today Boston showed there's no place for hate in our City." (Id. at ¶ 11.t.)

22.     In an undated statement, Mayor Walsh said: "Why give attention to people spewing hate?" (Id. at ¶ 11.u.)

23.     On August 19, 2017, Mayor Walsh tweeted: "Today, Boston stood for peace and love, not bigotry and hate. We should work to bring people together, not apart." (Id. at ¶ 11.v.)

24.     On August 19, 2017, Mayor Walsh stated: "I ask everyone to be peaceful today and respect our City. Love, not hate. We stand together against intolerance." (<u>Id.</u> at ¶ 11.w.)

25.     On August 21, 2017, Mayor Walsh said that white supremacists did take part in the rally that drew 40,000 counter-protesters to drown out their voices. (<u>Id.</u> at ¶ 11.x.)

Plaintiff contends that Mayor Walsh's statements defamed him. (<u>See</u> Complaint, Count I.) This is the second lawsuit Plaintiff has filed against Mayor Walsh related to the same subject matter. On October 23, 2017, Plaintiff filed his first lawsuit against Mayor Walsh in state court. (State Court Complaint is attached hereto as Exhibit E.) During that action, Plaintiff was represented by counsel - Rinaldo Del Gallo, Esq.[2] In his verified Complaint, Plaintiff swore, under oath, that he resided in Lowell, Massachusetts. (<u>Id.</u> at ¶ 1 ("My name is Brandon Navom and my address is and my address is (sic) 30 Billerica Street, Lowell, MA 01852.")) Despite the fact that Plaintiff resided in Middlesex County (Lowell, Massachusetts), Plaintiff filed his lawsuit in Berkshire County Superior Court. (Berkshire County Superior Court Docket is attached hereto as Exhibit F.)

The Berkshire County Superior Court complaint, which is almost identical to the Complaint in the instant action, contained one cause of action – for defamation against Mayor Walsh. (<u>See</u> Ex. E.) On January 12, 2018, Mayor Walsh filed a motion to transfer the matter to the proper venue or, in the alternative, dismiss the action. (<u>See</u> Ex. F.) On February 20, 2018, the Court (Agostini, J.) transferred the matter to Middlesex County Superior Court. (<u>See</u> Ex. G) ("Given that [Navom] resides in Middlesex, I will transfer the case to Middlesex Superior Court.").

---

[2] Del Gallo also filed his own federal lawsuit related to the same event. <u>See</u> <u>Del Gallo v. Walsh et al.</u>, 3:17CV30167. That case dismissed by the court (Ponser, U.S.D.J.). The dismissal was affirmed by the First Circuit Court of Appeals. <u>See</u> <u>Del Gallo v. Walsh et al.</u>, 18-1187

On February 21, 2018,  Plaintiff filed a verified first amended complaint ("FAC").  (FAC attached hereto as Exhibit H.)   In the FAC, Plaintiff attempted to claim a dual residency of Lowell, Massachusetts and North Adams, Massachusetts.  (Id. at ¶ 1-2.)  On March 29, 2018, Mayor Walsh filed Motion to Dismiss the FAC. (Middlesex County Superior Court Docket is attached hereto as Exhibit I at Dkt. No. 13.)  A hearing was held on the Motion to Dismiss the FAC on September 14, 2018.   On October 19, 2018, the Court (Barry-Smith, J.) dismissed Plaintiff's action on the ground that a conditional privilege applied to the statements made by Mayor Walsh.  (Order attached hereto as Exhibit J.)

Plaintiff appealed to the Massachusetts Appeals Court.  On April 7, 2020, the Appeals Court affirmed the judgment in favor of Mayor Walsh.  Navom v. Walsh, 97 Mass. App. Ct. 1109, 144 N.E.3d 310, review denied, 485 Mass. 1101 (2020).  (Appeals Court decision attached hereto as Exhibit K.)  On April 21, 2020, Plaintiff applied to the Massachusetts Supreme Judicial Court for further appellate review, which the Court denied on June 11, 2020.  Navom v. Walsh, 485 Mass. 1101 (2020).  Notwithstanding the finality of the prior action, on August 11, 2020, Plaintiff refiled the same lawsuit, albeit with a differently labeled cause of action, in federal court.  In addition, although Plaintiff continues to reside in Lowell, he filed the instant action in Springfield. While Plaintiff is proceeding *pro se*, Plaintiff copied his former attorney, Mr. Del Gallo, on an email to defense counsel concerning the filing of the instant lawsuit.  (See Ex. L.)

### III. ARGUMENT

#### A.  Standard of Review.

##### 1.  Motion to Dismiss or Transfer Pursuant to Fed. R. Civ. P. 12(b)(3).

"Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss  for  improper  venue."  Avidyne  Corp.  v.  Lewis,  No.  CV  16-10179-JCB,  2016  WL

9402846, at *2 (D. Mass. Nov. 17, 2016).  28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  "This question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 55 (2013).  "In evaluating a motion to dismiss for improper venue under Rule 12(b)(3), allegations in the complaint are accepted as true and the record includes affidavits and documentation."  Gill v. Nakamura, No. 14-13621-NMG, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015).  Once venue is challenged, the burden is on Plaintiff to establish that venue is proper.  See Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979).  As discussed below, the Complaint should be dismissed for failure to file in the correct venue.

### 2. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  However, this tenet does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  Mere recitals of the element of a cause of action, supported only by conclusory statements, do not suffice.  See id. (Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 545 (citations omitted).  A plaintiff must set

forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." <u>Gooley v. Mobile Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988).  "Although pleading standards are minimal, the First Circuit requires more than conclusions or subjective characterizations." <u>Columbus v. Biggio</u>, 76 F. Supp. 2d 43, 52 (D. Mass. 1999) (citations and quotations omitted).  A complaint will not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." <u>Twombly</u>, 550 U.S. at 557 (quotations omitted).  "Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." <u>Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990).  As discussed below, Plaintiff's Complaint should be dismissed for failing to meet the <u>Twombly</u> pleading requirement.

### B.  Plaintiff Did Not File The Action In The Correct Division.

#### 1.  Plaintiff is a resident of Lowell, Massachusetts.

Local Rule 40.1(d)(1)(A) provides that "Civil cases shall be assigned to the respective divisions if: (A) All of the parties reside in that division."  The overwhelming evidence is that Plaintiff resides in Middlesex County. Plaintiff's real property is in Lowell, Massachusetts. Plaintiff's RMV record lists his residence in Lowell. Plaintiff's Facebook page states that he resides in Lowell.  With respect to the Commonwealth and his friends, Plaintiff maintains that his residence is in Lowell.  In this lawsuit, on the other hand, Plaintiff wants to contend that he resides at his parents' home in Berkshire County.  Because Plaintiff is a resident of Middlesex County and Mayor Walsh resides in Suffolk County, the lawsuit should have been filed in the Eastern Division.  <u>See</u> Local Rule 40.1(c)(1).

Fed. R. Civ. P. 12(b)(3) permits a defendant to move to dismiss for improper venue. <u>See</u>

Avidyne Corp. v. Lewis, No. CV 16-10179-JCB, 2016 WL 9402846, at *2.  It also permits transfer in it is in the interest of justice.  See Mulcahy v. Guertler, 416 F. Supp. 1083, 1086 (D. Mass. 1976).  The burden is on the plaintiff to show a "reason why it would be more in the interest of justice for this Court to transfer the case rather than to dismiss it."  Id.  In this case, the Court should not transfer the action but, instead, dismiss it outright.  "It is obviously not 'in the interest of justice' to allow this section to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district."  Id. (Quoting and citing Dubin v. United States, 380 F.2d 813, 816 n.5 (5th Cir. 1967)); accord Cole v. DiSantis, 89 F.3d 823 (1st Cir. 1996); Cole v. Wittman, 95 F.3d 1146 (1st Cir. 1996).  This is the second lawsuit where Plaintiff has filed a lawsuit against Mayor Walsh in the wrong court. The last time, the court transferred the action, this time, it should be dismissed.  Alternatively, the Court should transfer the case to the Eastern Division.

## 2.   Even if Plaintiff resides in North Adams, the Court should exercise its discretion and transfer the matter.

Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  If the request for transfer is made pursuant to § 1404, "the burden of proof rests with the party seeking transfer."   Id. "Unlike § 1406(a), § 1404(a) does not condition transfer on the initial forum's being 'wrong.' And it permits transfer to any district where venue is also proper (i.e., 'where [the case] might have been brought')."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 59 (2013).  When determining a Section 1404 motion the court "adjudicate[s] motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v.

Barrack, 376 U.S. 612, 622 (1964)).  This case should be transferred for the convenience of the witnesses and in the interests of justice.  All of the events that gave rise to Plaintiff's lawsuit took place in Suffolk County.  At all times relevant to the Complaint, Plaintiff resided in Lowell.  All of the witnesses are in the Eastern Division.  In addition, it would be impractical to have a sitting mayor travel across the Commonwealth for deposition and trial.

### C.  Plaintiff's Claims Are Barred By The Doctrine Of Res Judicata.

"Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."  In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  The "preclusive effect of the state court judgment at issue here is determined under Massachusetts law."  Id.  "In Massachusetts, res judicata encompasses both claim preclusion and issue preclusion."[3]  Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008)  "Claim preclusion prevents the relitigation of all claims that a 'litigant had the opportunity and incentive to fully litigate ... in an earlier action.'"  Id. (Quoting In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d at 56); see Bagley v. Moxley, 407 Mass. 633, 636 (1990) ("Claim preclusion is the modern term for the doctrines traditionally known as merger and bar, and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies.") (Internal quotations omitted).  "There are three essential elements to the doctrine of claim preclusion: (1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment

---

[3] Issue preclusion likely applies to some of the facts pleaded by Plaintiff.  For instance, the Appeals Court determined that Mayor Walsh was discussing matters of public importance and noted that some of Plaintiff's allegations were factually inaccurate.  See Navom v. Walsh, 97 Mass. App. Ct. 1109.

on the merits." Bui v. Ma, 62 Mass.App.Ct. 553, 561 (2004) (internal quotations and citations omitted). "A claim is the same for res judicata purposes if it is derived from the same transaction or series of connected transactions." Saint Louis v. Baystate Med. Ctr., Inc., 30 Mass. App. Ct. 393, 399 (1991). Plaintiff's current action satisfies all of the elements of claim preclusion.

### 1.  Identity of the Parties

"Claim preclusion has as a prerequisite that there be an identity or privity of the parties to the present and prior actions." TLT Const. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass. App. Ct. 1, 5 (1999). "A person who is not a party to the prior action but whose interest is represented by a party may have the benefit of the judgment in the prior case." Roche v. Roche, 22 Mass. App. Ct. 306, 309 (1986). The "determination whether a nonparty is in privity with a party depends on the nature of the nonparty's interest, whether that interest was adequately represented by a party to the prior litigation, and whether binding the nonparty to the judgment is consistent with due process and common-law principles of fairness." Degiacomo v. City of Quincy, 476 Mass. 38, 43–44 (2016). Clearly, Mayor Walsh was a party in the prior action and the first prong is satisfied as to Mayor Walsh. While the City was not a defendant in the prior case, it was the statements that Mayor Walsh made while acting as mayor of the City of Boston that were at issue. There is sufficient privity between Mayor Walsh and the City that the first prong for claim preclusion is satisfied.

### 2.  Identity of the Causes of Action.

"Claim preclusion requires that there be an identity of causes of action in the prior and present actions." TLT Const. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass. App. Ct. at 6–7. "[I]n defining a cause of action for purposes of *res judicata*, the First Circuit adheres to a broad transactional approach that embraces all rights of the plaintiff to remedies against the

defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) (internal citations and quotations omitted). "With respect to the second element, claim preclusion will apply even though a party is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies." Charlette v. Charlette Bros. Foundry, 59 Mass. App. Ct. 34, 44 (2003). "This boils down to whether the causes of action arise out of a common nucleus of operative facts." Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998)  The allegations in Plaintiff's federal lawsuit mirror his state court complaint and all relate to the same set of statements that Mayor Walsh purportedly made about the Rally. While Plaintiff has assigned a new title to his cause of action, the underlying claim is the same.  The second prong for claim preclusion is satisfied.

### 3.  A Prior Final Judgment on the Merits.

The third element of claim preclusion is easily satisfied. A Massachusetts Superior Court has dismissed Plaintiff's lawsuit.  The dismissal was affirmed on appeal.  Both courts determined that a conditional privilege applied to Mayor Walsh's statements.[4]  The third element of claim preclusion is easily satisfied.  See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) ("The dismissal of the New York suit for failure to state a claim was plainly a final judgment on the merits.").

### D.  Plaintiff Has Not Sufficiently Pleaded A Violation of 42 U.S.C. § 1983.

Plaintiff's first cause of action is for violation of 42 U.S.C. § 1983. Because Plaintiff sued Mayor Walsh in his official and individual capacity, Count I is against the City and Mayor

---

[4] The Appeals Court highlighted other deficiencies in Navom's state court complaint, including that statements appeared to be "opinion" and, therefore, not actionable, nor did the statements appear to be "of or concerning" Navom.  See Navom v. Walsh, 2019-P-0230, fn. 7 and fn. 8.

Walsh.  Plaintiff's claim against both Defendants fails.

**1.   Plaintiff Has Not Pleaded A Claim Against the City.**

"A suit against a municipal official in his or her official capacity is considered a suit against the municipality itself." Diaz-Garcia v. Surillo-Ruiz, Civil No. 13-1473 (FAB), 2014 WL 4403363, at *5 (D.P.R. Sept. 8, 2014) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985); Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005)).   "A municipality can be sued directly under section 1983 for monetary, declaratory, and injunctive relief." Id. (Citing Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978)); Guigan v. Conte, 629 F. Supp. 2d 76, 82 (D. Mass. 2009) ("A lawsuit against a state official in his or her official capacity for money damages is, in substance, a suit against the state itself."); Laubinger v. Department of Rev., 41 Mass. App. Ct. 598, 602, 672 N.E.2d 554 (1996) ("the law treats the action as [one] against the official's office and hence against the State") (quoting from O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n. 13 (1993)); Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 583, (2001).  Plaintiff's claim for violation of 42 U.S.C. §1983 fails under Monell v. Department of Social Services of City of New York, 436 U.S. at 692.

Under § 1983, the City is "not responsible for the unauthorized and unlawful acts of its officers." Id.  Courts analyzing § 1983 "have consistently refused to hold municipalities liable under a theory of respondeat superior." Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997).  "Municipal liability may only be imposed when there are 'underlying, identifiable constitutional violations' that are 'attributable to official municipal policy.'" Dew v. City of Bos., 405 F. Supp. 3d 294, 303 (D. Mass. 2019) (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010)).  The Supreme Court, "concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high

bar for assessing municipal liability under <u>Monell</u>." <u>Young v. City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 26 (1st Cir. 2005).  Therefore, to plead municipal liability under § 1983, the plaintiff must allege (1) an unconstitutional "policy or custom" of the City, ***and*** (2) that this policy or custom was "the moving force" behind the alleged injury.  <u>See</u> <u>Brown</u>, 520 U.S. at 403-05.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick v. Thompson</u>, 563 U.S. 51, (2011).

Section 1983 is not just "an instrument of justice in the hands of the weak against the mighty," but it also has the potential for misuse; therefore, a Section 1983 claimant must "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." <u>Dewey v. University of New Hampshire</u>, 694 F.2d 1, 3 (1st. Cir.1982).  Within this analytical framework, Plaintiff has failed to plead facts that suggest any actionable claims against the City as he does no allege any official policy and custom.  Instead, Plaintiff contends that the City lacks "proper policies and procedures" to "force WALSH to refrain from commenting publicly about issues…"[5]  The failure to plead a policy or custom is fatal to his claim.

The second problem Plaintiff has is that he has not pleaded a constitutional violation.  <u>See</u> <u>infra</u> III.D.2.a.  Without an underlying constitutional violation, the claim against the City must be dismissed.  <u>See e.g.</u> <u>Evans v. Avery</u>, 100 F.3d 1033, 1040 (1st Cir. 1996).

### 2.  Plaintiff has not sufficiently pleaded a claim against Mayor Walsh.

### a.  Plaintiff has not pleaded a § 1983 violation.

"In order to show a First Amendment violation, a plaintiff must show that the defendant intended to inhibit speech protected by the First Amendment, and that the defendant's conduct

---

[5] In making this statement, Plaintiff obviously does not see the irony of his claim juxtaposed with his demand for prior restraint of speech.

had a chilling effect on the protected speech that was more than merely speculative, indirect or too remote." Dolan v. Tavares, No. CIV.A. 10-10249-NMG, 2011 WL 10676937, at *6 (D. Mass. May 16, 2011) (citations and quotations omitted).  Plaintiff has not pleaded a violation of his First Amendment rights but has repleaded his previously dismissed defamation claim.  There are no allegations related to Mayor Walsh doing anything other than commenting on "matters of public importance."  Navom v. Walsh, 97 Mass. App. Ct. at 1109.  There are no facts to support that Mayor Walsh's actions had a chilling effect on the Rally.  Instead, Plaintiff pleads that the Rally went forward with speakers. Even though the Rally took place, Plaintiff elected not to participate.  Despite Plaintiff's conclusory allegations, there was no causal relation between Plaintiff's decision not to participate and Mayor Walsh's comments.  Even if Plaintiff amended his Complaint to plead a causal connection,  the connection would be speculative, indirect or too remote to give rise to a claim.

**b.  The statements are privileged.**

"Statements made by public officials while performing their official duties are conditionally privileged."  Mulgrew v. Taunton, 410 Mass. 631, 635 (1991). The conditional privilege "is meant to allow public officials to speak freely on matters of public importance during the exercise of their official duties." Id. "Simple negligence, want of sound judgment, or hasty action [alone] will not cause loss of the [conditional] privilege."  Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223 (1987).  As two prior courts have determined, Mayor Walsh's statements were concerning matters of public importance and were conditionally privileged.

**E.  Count II fails to state a cognizable claim.**

**1.  Plaintiff has not pleaded a Monell claim.**

Like Plaintiff's First Amendment claim, Plaintiff has not pleaded a policy or custom attributable to the City. Accordingly, Count II fails.

### 2. Not a recognized claim in the First Circuit.

State created danger is a due process violation that originates from the Supreme Court case of <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, where the court opened the possibility of a duty the state has to an individual when the "State may have been aware of the dangers . . . . [but] played no part in their creation, nor did it do anything to render him any more vulnerable to them." 489 U.S. 189, 201 (1989); <u>see</u> <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 34-35 (1st Cir. 2005). Following <u>DeShaney</u>, some circuit courts "have recognized the existence of a constitutional violation when, on particular facts, the state fails to protect against private violence under this state created danger theory." <u>Rivera</u>, 402 F.3d at 35. In order to find a 42 U.S.C. § 1983 violation the "facts alleged [must] state a claim for violation of constitutional rights." <u>Rivera</u>, 402 F.3d at 33. In order to find a constitutional violation in a substantive due process claim "the plaintiff must first show a deprivation of a protected interest in life, liberty, or property . . . . Second, the plaintiff must show that the deprivation of this protected right was caused by governmental conduct." <u>Id.</u> at 33-34. A "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>See</u> <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. at 197. Furthermore, duty arises "in situations in which there is a 'special relationship'" between the government and the individual. <u>Rivera</u>, 402 F.3d at 34 (citing <u>DeShaney</u>, 489 U.S. at 200) (Arising from the lack of protection of a witness to a murder being killed on orders of the alleged perpetrator); <u>see e.g.</u>, <u>Coyne v. Cronin</u>, 386 F.3d 280 (1st Cir. 2004) (analyzing the issue due to the lack of protection for a prisoner who was a confidential prison informant); <u>Frances-Colon v. Ramirez</u>, 107 F.3d 62 (1st Cir. 1997) (analyzing

the issue from a government physician's negligence to the child during childbirth). While [the First] circuit has discussed the possible existence of the state-created danger theory, we have never found it applicable to any specific set of facts." Irish v. Maine, 849 F.3d 521, 526 (1st Cir. 2017); see Johnson v. City of Biddeford, No. 2:17-CV-00264-JDL, 2020 WL 1877964, at *5 (D. Me. Apr. 15, 2020) ("The First Circuit has considered the 'state-created danger' exception to DeShaney in several decisions but has not officially recognized it.").

In addition "[e]ven if there exists a special relationship between the state and the individual or the state plays a role in the creation or enhancement of the danger, under a supposed state created danger theory, there is a further and onerous requirement that the plaintiff must meet in order to prove a constitutional violation: the state actions must shock the conscience of the court." Rivera, 402 F.3d at 35. The conscience shocking standard is defined as "state action [that is] 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' '[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" Id. at 36 (citing County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)) (citations omitted). Plaintiff has not pleaded a due process violation. In addition, Plaintiff has not pleaded a special relationship between him and Mayor Walsh or the City. Moreover, a plain review of the statements reveals that none of the statements "conscience shocking." Accordingly, Count II must be dismissed.

### F.  Plaintiff's Claims are Barred by Qualified Immunity

"Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Kelley v. LaForce, 288 F.3d 1, 6 (1st Cir. 2002) (qualified immunity available as defense to §1983 civil liability claims).  "The protection of qualified immunity applied regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).  This doctrine of qualified immunity protects such public officials so that they may act freely "without fear of retributive suit for damages except when they should have understood that particular conduct was unlawful."  Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004) (citations omitted).  The qualified immunity determination is to be determined as soon as possible because "[t]he privilege is an immunity from suit rather than a mere defense in liability and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

To determine whether an official violated clearly established rights of which a reasonable person would have known, the First Circuit follows "a two-prong analysis for determining whether defendants are entitled to qualified immunity, asking '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'"  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (quoting Pearson, 129 S. Ct. at 811).  "The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable

official." Id. (Citing <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 36 (1st Cir.2011). Here, Plaintiff fails both prongs of the analysis.

The facts alleged by Plaintiff do make out a violation of a constitutional right. Plaintiff's first cause of action for "Violation of the First Amendment" is unintelligible. Plaintiff contends that Mayor Walsh made defamatory statements about the "organizers & attendees of the Boston free-speech rally." (Complaint, ¶ 12.) Mayor Walsh made the statements because he was in an election year. (Id. at ¶ 13.) Plaintiff lost his "job as a software consultant the day after WALSH began making false and defamatory statements. NAVOM's employer stated that they were firing him because of the statements made by WALSH and the backlash that they had received online." (Id. at ¶ 16.) "Because of this, NAVOM was unable to speak at the event." (Id.) Plaintiff's conclusion is unconnected to the prior statements. There is no connection between Plaintiff's employment and Mayor Walsh. There also was no connection between Plaintiff's loss of employment and his decision not to speak at the Rally.

Plaintiff cannot establish that (i) the right in question was sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (ii) whether the particular factual violation in question would have been clear to a reasonable official. There is no legal authority that precludes a Mayor from discussing current events and, therefore, qualified immunity would apply. In addition, qualified immunity would apply to Plaintiff's State Created Danger claim as the First Circuit has yet to recognize the claim.

### G. The Court Should Order Monetary Sanctions Against Plaintiff.

Plaintiff's lawsuit is without merit. Plaintiff's first lawsuit against Mayor Walsh for the same event was previously dismissed and that dismissal was affirmed. In addition, Plaintiff's application to the Massachusetts Supreme Judicial Court for Further Appellate Review was

denied.   Nonetheless, Plaintiff filed a second lawsuit concerning the same incident.   Moreover, Plaintiff intentionally filed the lawsuit in the wrong courthouse.

Plaintiff's *pro se* status is not a bar to the imposition of Rule 11 sanctions.   Barrow v. Barrow, No. CV 16-11493-FDS, 2017 WL 2953636, at *6 (D. Mass. July 10, 2017) ("Rule 11 sanctions may be imposed against *pro se* litigants, particularly where they repeatedly assert baseless claims or file claims solely for the purpose of harassing others."); Jones v. Soc. Sec. Admin., No. C.A.03-12436-DPW, 2004 WL 2915290, at *3 (D. Mass. Dec. 14, 2004), aff'd, 150 F. App'x 1 (1st Cir. 2005) ("Under Rule 11, this Court may impose sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious.").   Despite his *pro se* status, Plaintiff appears to be consulting with his former counsel concerning this latest lawsuit – which serves no purpose except to harass the defendants and waste time and resources.   Plaintiff's conduct is an abuse of the legal process and should be sanctioned.   Accordingly, the Defendants request $11,857.50 in monetary sanctions as supported by the affidavit of Nieve Anjomi, Esq.

## V.   CONCLUSION

For the foregoing reasons, the City of Boston and Martin J. Walsh respectfully request that this Honorable Court dismiss the action with prejudice or, in the alternative, transfer the action to the Eastern Division.

Date:   September 30, 2020

Respectfully submitted,

**CITY OF BOSTON,**

By their attorneys:

Eugene F. O'Flaherty
Corporation Counsel

*/s/ Nieve Anjomi*
Nicole M. O'Connor (BBO# 675535)
Nieve Anjomi (BBO# 651212)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4034
nicole.oconnor@boston.gov
nieve.anjomi@boston.gov

## Certificate of Service

I, Nieve Anjomi, hereby certify that on September 30, 2020, a true copy of the above document was served via first class mail and email to:

Brandon Navom
680 State Road Apt. 3
North Adams, MA 01247
Navom1@yahoo.com

*/s/ Nieve Anjomi*
Nieve Anjomi

21